IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CASEY COVELLI**, | Case No. 3:19-cv-486-JR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **AVAMERE HOME HEALTH CARE LLC**, *et al.*, | |
| Defendants. | |

David A. Schuck and Leslie E. Baze, SCHUCK LAW, LLC, 208 E 25th Street, Vancouver, WA 98663. Of Attorneys for Plaintiff.

William E. Gaar and Jillian Pollock, Buckley Law, P.C., 5300 Meadows Road, Suite 200, Lake Oswego, OR 97035. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

This Court previously granted in part what the Court construed as Plaintiff's motion for reconsideration and clarified the standard to apply for an "integrated employer" under the Family Medical Leave Act (FMLA). *Covelli v. Avamere Home Health Care LLC*, 2020 WL 6395448 (D. Or. Nov. 2, 2020) (also referred to as the "Reconsideration Order"). The Court left analysis of Defendants' motion to dismiss under the clarified standard for Magistrate Judge Jolie A. Russo.

PAGE 1 – OPINION AND ORDER

Judge Russo issued Findings and Recommendation on November 20, 2020. Judge Russo concluded that the clarified standard did not change her previous findings and recommendation from June 22, 2020, and under the clarified standard Plaintiff's Third Amended Complaint (TAC) still failed to allege that the alleged parent companies[1] were integrated employers with Plaintiff's alleged direct employer. Thus, Judge Russo maintained her original recommendation that the Court grant Defendants' motion to dismiss Plaintiff's claims against all named Defendants except Plaintiff's adequately alleged direct employer Northwest Hospital LLC (NWH) and its joint or integrated employer Avamere Home Health Care LLC. Judge Russo recommended, however, that the Court give Plaintiff one final opportunity to allege claims against the parent companies under the clarified standard. This would mean dismissing Plaintiff's claims with prejudice against: (1) Defendant Avamere Family of Companies (an unregistered entity that, to the extent that it is a proper defendant, has already been properly named through other named Defendants); and (2) NP2U LLC, Signature Coastal LLC, and Signature Corvallis LLC (alleged sibling entities who are not potential joint employers); and dismissing Plaintiff's claims without prejudice against: (1) Defendants Avamere Group LLC (Avamere Group), Avamere Health Services LLC (AHS), and Avamere Skilled Advisors LLC (ASA) (the alleged parent entities); and (2) Avamere Bethany Operations LLC, Avamere Lake Oswego Investors LLC, Avamere Sherwood Operations LLC, Avamere Stafford Operations LLC, Avamere St. Helens Operations LLC, Beaverton Rehab & Specialty Care LLC, Clackamas Rehabilitation LLC, Crestview Operations LLC, Genesis Newberg Operations LLC, Keizer Campus Operations LLC, Keizer River Operations LLC, King City Rehab LLC, Laurelhurst

---

[1] Judge Russo did not interpret the Court's Reconsideration Order to relate to the alleged "sibling" entities, but only to relate to the alleged "parent" entities.

Operations LLC, Mountain View Rehab LLC, and Sunnyside Operations LLC (alleged sibling entities who are possible additional joint employers or integrated employers).

Plaintiff objects to the Findings and Recommendation. Plaintiff objects to Judge Russo only considering whether the parent entities were integrated employers under the clarified standard instead of all Defendants. Plaintiff also objects to the findings and recommendation that the TAC does not allege sufficient facts showing integrated employers under the clarified standard. The Court, therefore, reviews the issue *de novo*.

In the Reconsideration Order, the Court also ordered limited discovery against Defendants. Plaintiff filed a motion to enforce the Court's discovery order. On January 5, 2021, Judge Russo granted Plaintiff's motion to enforce in part and ordered limited discovery under the Court's Reconsideration Order. Plaintiff then filed a second motion to enforce. On February 2, 2021, Judge Russo issued a discovery order denying Plaintiff's second motion. Plaintiff objects to Judge Russo's nondispositive discovery order. The Court, therefore, reviews whether the order is either clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## STANDARD OF REVIEW

### A.  Review of Magistrate Judge's Decision

The Federal Magistrates Act grants district courts the authority to delegate certain matters to magistrate judges. *See* 28 U.S.C. § 636(b)(1). In civil actions, a district court may designate a magistrate judge to determine any pretrial matter, except motions for injunctive relief, for judgment on the pleadings, for summary judgment, to permit or deny maintenance of a class action, to dismiss for failure to state a claim, and to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A). For any of these excluded motions, a district judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B).

Rule 72 of the Federal Rules of Civil procedure implements the authority provided by the Federal Magistrates Act. Under Rule 72(a), a magistrate judge may "hear and decide" all referred pretrial matters that are "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a); *see also Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (explaining that "magistrate judges may hear and determine nondispositive matters, but not dispositive matters"). For pretrial matters referred to a magistrate judge that are dispositive of a claim or defense, without consent by all parties, Rule 72(b) allows the magistrate judge only to "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1).

The distinction between a dispositive motion and a nondispositive matter is significant for the standard of review. When a party timely objects to a magistrate judge's findings and recommendations concerning a dispositive motion, the district judge must make a *de novo* determination of those portions of the magistrate judge's proposed findings and recommendations to which an objection has been made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). When a party timely objects to a magistrate judge's determination of a nondispositive matter, however, the district judge may reject that determination only when it has been shown that the magistrate judge's order is either clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This means the Court "will evaluate the Magistrate Judge's factual findings to determine if any are clearly erroneous" and "will evaluate the Magistrate Judge's legal conclusions to determine if any are contrary to law, which involves a *de novo* review of those issues." *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019); *see also id.* at 1141-42.

## B. Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the Court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**DISCUSSION**

**A.  Motion to Dismiss—Integrated Employer**

The only issue remaining on Defendants' motion to dismiss is their alleged status as integrated employers. The Court previously concluded that Plaintiff sufficiently stated a claim against his direct employer NWH and alleged sibling entity Avamere Home Health Care, LLC, as a joint or integrated employer. Plaintiff argues that under the FMLA all the alleged parent and additional sibling entities of NWH were integrated employers with NWH under the standard the Court identified in the Reconsideration Order.

**1.  Allegations Relating to The Avamere Family of Companies**

First, the Court addresses consideration of the allegations in the TAC relating to The Avamere Family of Companies. Plaintiff alleges that this is an unregistered entity with corporate officers and managers, that it maintains offices, that it maintains a website, that it submits reports, and that it performs other corporate functions. Plaintiff then alleges many more facts relating to The Avamere Family of Companies.

Assuming for purposes of this motion that Plaintiff's allegations that The Avamere Family of Companies is a valid entity are true, the Court previously held that The Avamere Family of Companies, as an unregistered entity, was not properly a named defendant under Oregon or federal law because the "real and true name" of this unregistered entity had been named in the TAC. Specifically, the Court identified Plaintiff's allegation that Avamere Group is the "the ultimate operator and management of The Avamere Family of Companies." The Court also notes that Plaintiff alleges that the Avamere Group "may be identical or substantially identical to The Avamere Family of Companies." Thus, taking Plaintiff's allegations as true for purposes of this motion, the Court construes Plaintiff's allegations relating to The Avamere Family of Companies as applying to the Avamere Group.

### 2. Allegations on Information and Belief

The TAC is 249 pages and contains 690 numbered paragraphs and hundreds more subparagraphs (many paragraphs of which are duplicative and repetitive, some almost word-for-word). Plaintiff cites public websites, publicly filed information, and other publicly available information about Defendants to support Plaintiff's allegations about the integrated nature of Defendants' relationship. Plaintiff also alleges many facts on information and belief.

"The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (simplified); *see also GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*, 2016 WL 3027336, at *3 (C.D. Cal. May 26, 2016) ("Even after *Iqbal* and *Twombly*, numerous courts have held that facts may be pleaded on information and belief—especially where, as here, the underlying evidence is peculiarly within the defendant's possession." (collecting cases)). Recognition of this type of pleading is based in part on Rules 11 and 8(b)(5) of the Federal Rules of Civil Procedure. 5 Charles H. Wright, Arthur Miller, Mary K. Kane & A. Benjamin Spencer, Fed. Prac. & Proc. Civ. § 1224 (3d ed. October 2020 update) (hereinafter Wright & Miller). Rule 11 authorizes a *pro se* party or the attorney of a represented party to certify that he or she has prepared the pleading based on "the best of the person's knowledge, information, and belief," which supports that an allegation may be based on information and belief, along with knowledge. Fed. R. Civ. P. 11. Rule 8(b)(5) permits a pleader to state that he or she "lacks knowledge or information sufficient to form a belief about the truth of an allegation," which supports the converse—a right to allege something based on information or belief.

Allowing allegations on information and belief also is "a practical necessity," because it "is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." Wright & Miller, § 1224. Factual allegations on information and belief that are not peculiarly within the possession and control of the defendant and are merely conclusory or are "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint," however, and the Court need not accept them as true. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

### 3.  Standards for Evaluating Integrated Employers

The integrated employer test requires considering the totality of the circumstances, with consideration of at least four factors: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership and financial control. 29 C.F.R. § 825.104(c)(2). No single factor is dispositive and all need not be present to find integrated employment. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 428 (6th Cir. 2014). The Ninth Circuit has not determined whether in the FMLA context a court should weigh any single factor more heavily than another. The First and Sixth Circuits weigh all factors equally in FMLA cases, even though in employment discrimination cases courts give control of labor relations more weight. *See, e.g.*, *id.*; *Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 5 (1st Cir. 2006).

The Court notes that Plaintiff focuses his allegations on linking an entire "network" of entities as if that would suffice to assert a claim against each Defendant, including each subsidiary (or sibling) entity. Many of Plaintiff's allegations involve all the entities combined. Each entity against whom Plaintiff intends to state a claim, however, must independently meet

the test for integrated employer status. Enough factors between NWH and each sibling entity must support suing that specific sibling entity—not between the sibling entity and a parent entity and then between that parent entity and NWH. In other words, Plaintiff cannot rely on the connection between NWH and the alleged parent company or companies, and then the connection between the parent company or companies and a different sibling company, to connect NWH to that sibling company. The Court considers each Defendant's connection to NWH separately to see if Plaintiff sufficiently alleges that entity is an integrated employer with NWH. If Plaintiff's allegations collectively are insufficient, however, the Court does not consider the allegations as to each separate Defendant. With this in mind, the Court reviews the factors for integrated employment.

### 4. Common Management

Under the common management factor, the Court considers "whether the entities have common officers, directors, and managers." *EEOC v. Con-Way, Inc.*, 2007 WL 2610367, at *5 (D. Or. Sept. 4, 2007). Merely having officers and directors in common, however, is not sufficient. *Id.* As the Supreme Court has noted, "officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997)). Thus, under this factor, a court looks to whether "the common officers or managers 'wore the two companies' hats interchangeably' during their dual service." *Con-Way*, 2007 WL 2610367, at *5 (quoting *Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304, 313 (S.D.N.Y. 1998)); *see also Taylor v. Shippers Transp. Exp., Inc.*, 2014 WL 7499046, at *19 (C.D. Cal. Sept. 30, 2014). This entails evaluating "whether the common officers or managers exert regular control, i.e. day-to-day, over the operations of both entities." *Con-Way*, 2007 WL 2610367, at *5.

Plaintiff recites many purported facts about ownership and the alleged job titles of persons affiliated with Defendants. Plaintiff alleges information from public websites, Linked-In, and a company organization chart found in a publicly-available corporate filing. Plaintiff alleges that Defendants share many managers, officers, and directors. For example, Plaintiff alleges that Richard Dillon, Ronald Odermott, Gary Wart, Matthew Hilty, and Lawrence Lopardo hold officer or managerial roles with several Defendants (*e.g.*, Mr. Lopardo is the Executive Vice President of AHS, the Chief Legal Officer of AHS, the sole LLC Manager of Avamere Lake Oswego Operations LLC, and the sole LLC Manager of Crestview Operations LLC). Plaintiff also alleges, based on their job titles from the organization chart and some job descriptions in their Linked-In profiles, that Mike Billings, Donna Meuller, Nicolette Merino, Carl Tabor, Rich, Jolly, Mike Woodrow, Sonia Rai, Dale Fruehauf, Mary Kofstad, Jolynn Monro, Sarah Silva, and Brad Little are common managers between entities.

The volume of alleged interrelated directors, officers, and managers supports a finding of common management. The job descriptions alleged from Linked-In, however, are general and at such a high level, they do not show day-to-day management of *separate* corporate entities. They include descriptions such as

> [r]esponsible for providing strategic leadership within the Avamere Family of Companies by overseeing all ancillaries, including Infinity Rehab and Signature companies . . . with oversight responsibilities for Infinity Rehab, Signature Healthcare at Home, and human resources and the People/Culture initiative across the Avamere Family of Companies.

ECF 76 at 118 (TAC ¶ 160) (alterations in original). Indeed, having oversight responsibility over multiple companies is not day-to-day management and typically is part of parent company's relationship with a subsidiary. As explained by the Southern District of California, discussing control in the agency context,

> The parent's general executive control over the subsidiary is not enough; rather there must be a strong showing beyond simply facts evidencing the broad oversight typically indicated by the common ownership and common directorship present in a normal parent-subsidiary relationship. As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy.

*In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1063-64 (S.D. Cal. 2017) (simplified)). Considering all of Plaintiff's allegations, this factor only provides little support of integration.

### 5.  Interrelation Between Operations

Evidence of this factor may include "interrelated operations, such as combined accounting records, bank accounts, lines of credit, payroll preparation, telephone lines, or offices, and interchange of employees." *Taylor*, 2014 WL 7499046, at *18 (quotation marks omitted); *see also Con-Way*, 2007 WL 2610367, at *3 ("Evidence of interrelated operations can include common offices, long distance shipping, bank accounts, payroll preparation, and shared facilities."); *Saalim v. Dycom Indus., Inc.*, 2008 WL 2966312, at *5 (D.N.J. July 31, 2008) ("[T]his Court finds that an integration of operations is better demonstrated by factors such as 'the commingling of funds and assets, the use of the same work force and business offices for both corporations, the severe undercapitalization of the subsidiary' and the 'failure to observe such basic corporate formalities as keeping separate books and holding separate shareholder and board meetings.'" (quoting *Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 513 (3d Cir. 1996) (simplified)). Shared offices and administrative services, however, are typical in parent-subsidiary relationships and generally are not found to support integrated employment unless there is greater intertwinement between the two entities. *See Engelhardt*, 472 F.3d at 7-8; *Con-Way*, 2007 WL 2610367, at *4-5 (citing cases); *see also Hukill v. Auto Care, Inc.*, 192 F.3d 437,

443-44 (4th Cir. 1999) (explaining that a parent's practice of providing administrative services to
its subsidiaries "is not unusual in today's business climate and is of no consequence" and that
"'[f]irms too tiny to achieve the realizable economies of scale or scope in their industry will go
under unless they can integrate some of their operations with those of other companies, whether
by contract or by ownership'" (quoting *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 942 (7th Cir.
1999))) *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).

Plaintiff alleges that the parent companies provide many administrative, financial,
technical, and legal services to the subsidiaries and use a centralized campus in Wilsonville,
Oregon for those purposes. Plaintiff also alleges that NWH's principal place of business is at the
Wilsonville, Oregon campus, although it also has a Tigard, Oregon facility. Plaintiff further
alleges that the parent companies are responsible for, among other things, advertising for open
positions, conducting job interviews, conducting and evaluating pre-hire drug tests, maintaining
employee records, processing employee payroll, maintaining and managing all company
(including NWH) email, website, and other communications infrastructure, producing and
maintaining all company policies, sharing certain employees, operating the employee concern
hotline, overseeing all entities' (including NWH) compliance with legal and regulatory
requirements, and providing employee training and orientation. The Court accepts these
allegations as true at this stage of the litigation. These allegations support significant interrelation
between the parent and subsidiaries, beyond simple use of forms or use of some administrative
services.

As a contrasting example, the Court provides the Eighth Circuit's discussion in
*Engelhardt* of why in that case the parent and the subsidiary who used the parent's forms and
administrative services, were *not* interrelated:

> Moreover, there is little, if any, evidence to suggest any interrelation between operations of the two companies, the integrated employer test's second factor. SPR [the subsidiary] has a separate headquarters, human resource department, records and record keeping, and separate worksites which fulfilled wholly distinct functions. The nature of their businesses is also distinct—GPC [the parent] is in the auto-parts retailing business whereas SPR is in the office-supply wholesaling business. Thus, SPR is not a GPC "division" whereby upper echelons of control are centralized and efficiencies are realized through consolidation of redundant administrative, human resource, and management functions.

*Engelhardt*, 472 F.3d at 6-7.

Plaintiff alleges most of the factors supporting integration that the Eighth Circuit held were absent in *Engelhardt*. Plaintiff alleges that NWH has the same principal place of business as the parent companies. Plaintiff alleges that NWH does not have its own human resources department, but instead Avamere Group and AHS performs that function. Plaintiff also alleges that NWH does not maintain its own records, but instead the parent companies maintain various records of NWH. Although the entities have different worksites (NWH's worksite is in Tigard and the parent companies' are in Wilsonville), they share a principal place of business and the overall alleged structure of NWH and its parent companies is one in which the "upper echelons of control are centralized and efficiencies are realized through consolidation of redundant administrative, human resource, and management functions." *Id.* at 7.

Further, Plaintiff alleges commingled financial accounting. Plaintiff alleges that upon information and belief, the balance sheets of Avamere Group show the "assets, profits, expenses, and losses, of each and every defendant herein, and all 'Avamere' and 'Signature' facilities and entities, as being the assets, profits, expenses, and losses of Avamere Group LLC itself." ECF 76 at 90 (TAC ¶ 82). Plaintiff also alleges upon information and belief that the wages paid to every single employee of every Avamere and Signature entity are accounted-for as wages paid by

Avamere Group. *Id.* (TAC ¶ 83). This information is peculiarly within the possession and control of Defendants, and therefore, in a Rule 12(b)(6) motion the Court accepts these allegations as true. Based on these allegations, Avamere Group is commingling finances and accounting with NWH and is not maintaining a separate financial corporate structure and books from NWH. This strongly supports a finding of integration. *See, e.g.*, *Marzano*, 91 F.3d at 513 (stating that a parent may be considered the employer of a subsidiary's employee when there is "the commingling of funds and assets" or the parent "fail[s] to observe such basic corporate formalities as keeping separate books" (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)); *Saalim*, 2008 WL 2966312, at *5 (same); *see also Lichwick v. Verizon*, 2009 WL 10740048, at *4 (S.D.N.Y. July 7, 2009) (finding that the allegation that the parent "reports the profits and losses of all of its subsidiaries in combined fashion" supports integration).

Plaintiff also alleges that Avamere Group reports all "8.8K" employees as its own. These employees are spread throughout 315 locations. This allegation also supports that Avamere Group is an integrated employer. *See, e.g.*, *Saalim*, 2008 WL 2966312, at *5 (noting that evidence of shared employees supports integration): *Lichwick*, 2009 WL 10740048, at *4 (finding an allegation that the parent listed in its Form 10-K statement the employees of the subsidiaries as its own employees to be evidence of integration).

Plaintiff's allegations plausibly show at this stage of the litigation that the parent entities were interrelated employers with NWH. *See, e.g.*, *Lichwick*, 2009 WL 10740048, at *4 (finding allegations that the parent and subsidiaries have a single human resources division, the parent reported the subsidiaries' employees as its own, the parent reported the subsidiaries' profits and

losses combined showed that the companies were interrelated). The Court next considers whether Plaintiff alleges that the sibling entities were interrelated with NWH.

Plaintiff alleges that employees were transferred among various sibling Defendants. These allegations have no detail about which Defendants and thus provide insufficient support to show that any particular sibling Defendant is interrelated with NWH.

Plaintiff alleges, however, that he was "routinely and frequently" transferred to work at the location of several specific sibling entities. His allegations about these transfers were the subject of a previous Court order and he has been granted the opportunity to make them more definite regarding information that would support that that those entities were joint employers. The allegations do, however, provide some support that those sibling entities are an integrated employer with NWH because they share employees. Plaintiff's remaining non-conclusory, factual allegations do not, however, support that these sibling entities are otherwise operationally interrelated with NWH. Plaintiff's allegations focus on the sibling entities' connections with the parent entities.

In sum, this factor supports that the parent entities were integrated employers with NWH. It does not support that the sibling entities to which Plaintiff was not transferred to work were integrated employers with NWH. The sharing of employees alone is not enough to support that the entities to which Plaintiff was transferred to work were integrated with NWH.

### 6. Centralized Control of Labor Relations

For the control of labor relations factor of the integrated employer test, the focus is on whether "employment relations, *as a whole*, are interrelated." *Grace v. USCAR*, 521 F.3d 655, 665 (6th Cir. 2008) (emphasis in original). "The fundamental inquiry is whether there exists overall control of critical matters at the policy level, not whether there is control over day-to-day labor decisions." *Alcoa, Inc. v. NLRB*, 849 F.3d 250, 258 (5th Cir. 2017) (quotation marks

omitted). Thus, control of labor *relations* is different from day-to-day control over *employees*.[2] *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 156 (2d Cir. 2014) ("And the plaintiff need not demonstrate that the parent company exercises 'day-to-day control' over labor relations."); *accord Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 43 (1st Cir. 2007) (affirming that the plaintiff raised issues of fact on the employer status of a direct employer subsidiary who engaged in the day-to-day supervision of the employee and the integrated employer status of the parent and one other subsidiary because the parent company "established company-wide human resources and personnel policies applicable to all its subsidiaries," and the other subsidiary paid the employee, provided her benefits, and retained the power to terminate her).

Considering the sibling entities, the Court previously concluded that Plaintiff sufficiently stated a claim against alleged sibling entity Avamere Home Health Care, LLC. Plaintiff's allegations do not plausibly suggest that the remaining sibling entities control the labor relations of NWH. Plaintiff alleges that the sibling entities are controlled, owned, and managed by some of the same people and parent entities that allegedly control, own, and manage NWH. Those allegations do not show that the *subsidiaries themselves* have control of critical labor policies of NWH. Indeed, they support just the opposite. Plaintiff alleges that it is the *parent entities* that control the subsidiaries, including NWH.

Plaintiff alleges that employees of certain subsidiary entities sometimes supervised Plaintiff. Those allegations, however, relate to whether those entities are a joint employer, not whether those entities had control of labor relations. Some day-to-day supervision of Plaintiff

---

[2] Some cases, particularly in the Title VII context, had included such a requirement. *See, e.g.*, *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) ("To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary."). The weight of authority, however, particularly recent authority, does not apply the requirement of day-to-day supervision to the integrated employer test, as discussed in the Reconsideration Order.

does not plausibly suggest that a sibling entity had control of critical labor relations and labor policy as a whole of NWH. *Accord Grace*, 521 F.3d at 665; *Alcoa*, 849 F.3d at 258. Additionally, the Court considers the sharing of employees between sibling entities in the interrelated operations factor above.

The Court next considers Plaintiff's allegations relevant to this factor against the parent entities to see whether Plaintiff adequately alleges control over labor relations of NWH. For purposes of the pending motion, the Court accepts Plaintiff's well-pleaded allegations as true. The first alleged parent entity is Avamere Group. Plaintiff alleges that Avamere Group: (1) advertises for open job positions for subsidiaries; (2) acts, along with AHS, as the human resources department for all Defendants, among other central support functions; (3) is the majority owner of NWH; (4) received the tax benefit when Plaintiff was directed to fill out the federal Work Opportunity Tax Credit form online, which identified Plaintiff as submitting information on behalf of his employer "Avamere" and not NWH; (5) has its Chief Operations Officer, Bob Thomas, who also is the 15% owner of NWH, as the first recipient on the group email announcing Plaintiff's hiring; (6) employed Plaintiff's direct supervisor Regina Piland, who performed Plaintiff's job performance evaluations; (7) is the signatory on Plaintiff's paychecks because the direct deposit states, "Avamere Group Payroll"; (8) is ultimately responsible for paying Plaintiff's wages; (9) paid the employer portion of Plaintiff's 401(k) contribution; (10) owned the Avamere company website, through which Plaintiff accessed benefits and other company information; and (11) owned the single centralized computer network through which Plaintiff performed his job functions from all of the various subsidiaries at which Plaintiff worked.

The next alleged parent entity is AHS. Plaintiff alleges that AHS: (1) serves as the payroll processor for all Defendants, including determining when employees receive their payment and directing that employees choose between direct deposit or a pay card (refusing to allow paper checks); (2) acts, along with Avamere Group, as the human resources department for all Defendants, among other central support functions; (3) provides all employees with copies of uniform written policies relating to all aspects of employment, which are identified with "Avamere" and "Signature" branding and not NWH, of which several direct employees to discuss issues with Avamere Group and other parent company managers and officers instead of direct employer subsidiary personnel; (4) operates the employee concern hotline; (5) required Plaintiff to take a drug test before he was hired; (6) evaluated Plaintiff's drug test; (6) advertised for and conducted the hiring process for senior level positions at NWH and other facilities; (7) reviews and processes all final payment records and authorizes the final paycheck for all employees; (8) provided Plaintiff's 401(k) plan; (9) is the only entity identified on Plaintiff's 401(k) forms (10) provided, paid for, and managed Plaintiff's other employment benefits; and (11) trained Plaintiff on the shared patient recordkeeping charting and computer system.

The third alleged parent entity is ASA. Plaintiff alleges that ASA: (1) provides oversight on compliance with the required standards for medical care and nursing; (2) maintains records on each facilities' and employee's compliance with applicable laws and regulations; (3) provides new hire training and orientation, including for nurses; (4) provided Plaintiff's training or trained the persons who conducted Plaintiff's training; (5) maintained records on Plaintiff's hire, training, and orientation; and (6) is the legal employer of senior level officials at NWH and other facilities.

Plaintiff alleges that all Defendants share the same insurance plans, 401k plan, and employee expense reimbursement plans, which Plaintiff alleges are provided and managed by ASH. Plaintiff also alleges that all Defendants share the same liability insurance policy, of which the parent companies are the insureds and the remaining companies are additional insureds.

Plaintiff also generally alleges that all the "Signature" and "Avamere" entities share websites and leadership academies. Plaintiff alleges that in 2019 the brands "announced a new organization structure that will bring together our previously siloed companies. These changes have been made to support our new priorities and form a more integrated network of senior housing and healthcare services." ECF 76 at 137-38 (TAC ¶ 228). The changes provided the opportunity to "collaborate more, share best practices with each other, increase job satisfaction, and make our companies and communities better places for our guests and employees." *Id.* The structural changes were "breaking down the silos that previously divided our companies, bringing us together into a fully integrated network of care. Functioning as a cooperative network of post-acute and senior living providers" and that "Cross-company and department communications help achieve widespread adoption of best practices and cross-functional teams are offering innovative solutions to meet the changing landscape of today's modern workforce." *Id.* at 138 (TAC ¶ 229). Plaintiff also alleges that his job application identified that he was applying for a position with the "Avamere Group of Companies."

Plaintiff alleges that during his hiring process, he was directed to address questions to Jody Carter, the "Director of Human Organizational Development." Plaintiff does not allege what entity employs Ms. Carter. Instead, Plaintiff alleges that she self-identified on Linked-In as having held human resources positions at "Signature Healthcare at Home" and "Signature Hospice, Home Health, Home Care." Plaintiff alleges these entities are assumed business names

registered to NWH, NP2U LLC, Signature Coastal LLC, Signature Corvallis LLC, and Avamere Home Health Care LLC. Plaintiff thus concludes that Ms. Carter was employed by all of those entities. The Court does not accept as true this allegation relating to Ms. Carter's employer, which is both a legal conclusion and not based on sufficient alleged facts.

Plaintiff also alleges that the recruiter who was involved in Plaintiff's hiring, Samantha Bennett, self-identified on Linked-In as the recruiter for "Signature Healthcare at Home." Plaintiff asserts that because Signature Healthcare at Home is an assumed business name for five subsidiaries, Ms. Bennett is an employee of all five. For the same reasons the Court did not accept this allegation for Ms. Carter, the Court does not accept this allegation for Ms. Bennett. Additionally, job recruiters can recruit for several entities and that does not make them an employee of each entity.

Plaintiff makes similar allegations about other employees—that they performed some role in relation to Plaintiff, that they self-identified on Linked-In as having a role with a company with an assumed business name registered to more than one Avamere or Signature entity, and thus that the person was legally employed by all entities associated with the assumed business name. The Court does not accept Plaintiff's allegations about those employees' legal employer as true.

Although the Court does not accept as true some of Plaintiff's allegations regarding the legal employer of certain supervisory employees, as set forth above Plaintiff alleges many other facts relating to the alleged structure and management of the parent entities that the Court does accept as true in a Rule 12(b)(6) motion. Based on these allegations, Plaintiff alleges a higher degree of control by the parent entities than merely providing paid centralized support services.

For example, Plaintiff's allegations plausibly show that the parent entities have control over "how many employees [NWH] needs, and whether, when and whom to hire and fire to meet those needs, . . . . hiring, . . . [and] compensation decisions." *Engelhardt*, 472 F.3d at 7 (citation omitted). Further, Plaintiff's allegations support a plausible inference that NWH had to adopt the parent companies' policies and was not allowed to adopt its own, different, company policies. *Id.* Thus, the use of the parent company policies supports an inference of centralized control of labor relations. *Id.*; *see also Torres-Negron*, 488 F.3d at 43. Additionally, Plaintiff alleges that job applications went through the parent companies and major hiring decisions were made by a parent company. This also supports centralized control of labor relations. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995) ("Moreover, KDT clearly maintained control of labor relations at ASI. For example, applications for employment with ASI went through KDT; all personnel status reports were approved by KDT; and ASI cleared all major employment decisions with KDT.").

Further, Plaintiff alleges that the parent companies are the ones that paid Plaintiff and provided benefits. This also supports centralized control. *See Torres-Negron*, 488 F.3d at 43 (holding that where the parent provided a companywide policy and "paid Torres, provided her benefits and retained the power to terminate her," there was "centralized, top-down control over employment decisions"). Considering all of Plaintiff's well-pleaded allegations, including those on information and belief, as true for purposes of the pending motion, Plaintiff has sufficiently alleged centralized control of labor relations between NWH and the parent entities at this early stage of the litigation. The allegation may not survive a motion for summary judgment, but that is not today's question.

### 7.  Common Ownership and Financial Control

The TAC contains many paragraphs taken from public records alleging facts, often on information and belief, relating to the common ownership and financial control of all Defendants. As for NWH, Plaintiff alleges that Avamere Group owns 85% and Mr. Bob Thomas owns 15%. Plaintiff alleges that Avamere Group also owns AHS, ASA, Avamere Home Health Care LLC, NP2U LLC, and Signature Coastal LLC. Plaintiff alleges that the same three or four people ultimately own all of Defendants. Accepting the allegations as true in a motion to dismiss, the Court finds that Plaintiff sufficiently alleges in the TAC a degree of common ownership and financial control between NWH and the other Defendants.

### 8.  Other Factors

The four factors are non-exclusive. Both the First Circuit and the Seventh Circuit have specifically discussed concerns with companies breaking into smaller segments to avoid statutory obligations as a significant concern. *See Engelhardt*, 472 F.3d at 5-6; *Papa*, 166 F.3d at 941. Indeed, in *Papa*, the Seventh Circuit explained:

> Each subsidiary might be adequately funded and comply with all requisite formalities for separate corporate status, and the group might make clear to all employees and all creditors that they could look only to the particular corporation with which they had dealt for the enforcement of their contractual entitlements. But if the purpose of this splintered incorporation were to elude liability under the antidiscrimination laws, the corporations should be aggregated to determine how many employees each corporation had. The privilege of separate incorporation is not intended to allow enterprises to duck their statutory duties.

166 F.3d at 941; *see also Engelhardt*, 472 F.3d at 6 ("This is because the 50-employee exception is an economic one rooted in protecting small businesses, and the purpose of the 'integrated employer' test is to ensure that a defendant has not structured itself to avoid labor laws.").

Plaintiff alleges many purported facts about interconnected people and job titles and services the parents perform for the subsidiaries. Plaintiff does not, however, allege facts from which the Court can plausibly infer that the owners created all of the separate corporate entities to avoid statutory duties, or, for example, to avoid the 50-employee threshold of the FMLA. Each subsidiary is tied to a separate primary physical location from which they provide services to the consuming public.[3] The "centralized" Wilsonville location is the location from which the parent companies allegedly provide administrative, financial, legal, and other support services. Thus, that may be the principal place of business and contact address for certain things (such as legal or technology services) for the subsidiaries, but the actual services by the subsidiaries are performed at their different physical locations. Plaintiff's allegations do not show that the subsidiaries were created with no valid basis other than to avoid statutory obligations.

Plaintiff alleges that while he worked for NWH, a Director of Nursing and a field nurse were transferred between Avamere facilities and Plaintiff's supervisor told him not tell anyone about the transfers because Defendants (no specific Defendant is identified) did not want people to know that they transferred employees between entities. The supervisor allegedly stated that the reason Defendants did not want people to know is because it would increase the potential legal liability of all Defendants. This allegation, however, is insufficient plausibly to show that the subsidiaries were created to avoid statutory liability.

### 9. Conclusion

Considering the totality of the circumstances, the Court finds that Plaintiff has sufficiently alleged that the parent entities were integrated employers with NWH. *See Lichwick*,

---

[3] Plaintiff alleges that all subsidiaries have the same principal place of business and mailing address at the Wilsonville campus. They each, however, have a different location at which they provide services.

2009 WL 10740048, at *4 ("From these averments, one can reasonably infer that 'Verizon Services Corp.' is an entity that provides labor, legal, and management support to all VCI subsidiaries, including Verizon North. . . . [T]his is a strong factor cutting in favor of treating VCI and Verizon North as a single entity, at this early stage of the litigation. Consequently, the Court denies Verizon's motion to dismiss." (footnote omitted)); *accord Schubert v. Bethesda Health Grp., Inc.*, 319 F. Supp. 2d 963 (E.D. Mo. 2004) (finding an issue of fact on integrated employment where the alleged integrated employer conducted a post-termination investigation, was listed on employment forms, was listed in the employee handbook, and was listed on the employee's W-2 form). Thus, Plaintiff states a claim against Avamere Group, AHS, and ASA, along with NWH and Avamere Home Health Care LLC as previously found by the Court.

The Court finds that Plaintiff has not sufficiently stated a claim against the remaining sibling entities. The Court declines to allow Plaintiff to amend his complaint at this time to assert a claim against NP2U LLC, Signature Coastal LLC, and Signature Corvallis LLC, although this dismissal is without prejudice if Plaintiff finds information during discovery that Plaintiff believes supports a claim against these entities. Plaintiff may then move for leave to file an amended complaint. This potential future leave to amend is narrowly-tailored, meaning that Plaintiff may move to amend if he finds information supporting integration or joint employer status such as commingled funds, hiring and firing authority, direct supervision, and the like.

The Court previously allowed Plaintiff leave to amend his complaint to describe his claims against Avamere Bethany Operations LLC, Avamere Lake Oswego Investors LLC, Avamere Sherwood Operations LLC, Avamere Stafford Operations LLC, Avamere St. Helens Operations LLC, Beaverton Rehab & Specialty Care LLC, Clackamas Rehabilitation LLC, Crestview Operations LLC, Genesis Newberg Operations LLC, Keizer Campus Operations LLC,

Keizer River Operations LLC, King City Rehab LLC, Laurelhurst Operations LLC, Mountain View Rehab LLC, and Sunnyside Operations LLC relating to when Plaintiff worked at these entities. Plaintiff's leave to amend on this ground is narrowly-tailored and focused on allegations relating to Plaintiff's purported employment at or with these entities.

## B. Discovery Order

In the Reconsideration Order the Court granted "limited discovery" and ordered Defendants to produce to Plaintiff within 30 days "enough records from Plaintiff's employment file, to the extent such records are in the possession, custody, or control of Defendants, to show at which entities Plaintiff worked and when, throughout the duration of Plaintiff's employment." *Covelli*, 2020 WL 6395448, at *4. In response, Defendants created a single page document, which distills information from Defendants' employment records on Plaintiff. This document listed by date and location when Plaintiff treated patients "in the field" other than Plaintiff's NWH Tigard location. The field locations include other Avamere and Signature facilities, as well as private homes and non-Avamere and Signature nursing home facilities. Defendants previously had produced to Plaintiff other records, including a payroll register detailing Plaintiff's wage payments and reimbursements.

Counsel for Plaintiff, dissatisfied that the one-page document complied with the production ordered in the Reconsideration Order, conferred with counsel for Defendants. Defendants then produced Plaintiff's time records from the two electronic time keeping programs used by Defendants during the time Plaintiff was employed. In total, as relevant to this motion, Plaintiff received from Defendants Plaintiff's payroll records, time records, and a one-page summary Defendants contend show the field locations at which Plaintiff worked.

Plaintiff remained dissatisfied with Defendants' production. On December 28, 2020, Plaintiff moved to enforce the Reconsideration Order. On January 5, 2021, Judge Russo accepted

that Defendants had produced the entire scope of Plaintiff's timekeeping records, but found that Defendants' production focused on his work at NWH and was "silent as to any full or partial ordinary shifts that plaintiff may have worked at the 15 other named facilities." ECF 106. Thus, Judge Russo ordered Defendants "to produce by January 15, 2021 enough records related to plaintiff's employment to show where he worked and when through February 2019—whether those records are kept with Northwest Hospice and/or the 15 other entities wherein plaintiff allegedly performed regular shifts." *Id.*

After Judge Russo's January 5th Order, Defendants stated that after a reasonable search they had not located documents showing regular shifts worked by Plaintiff at any of the fifteen nursing facilities named as Defendants. In response, Plaintiff filed the second motion to enforce, the subject of the pending objections. Plaintiff argued that after reviewing the documents produced by Defendants, there are times that Plaintiff was in the field, meaning not working at the NWH Tigard location, and yet the documents produced do not show where Plaintiff worked. Plaintiff asserted that there are many such "gaps" in the records produced, and offered by way of example 14 instances. Plaintiff also submitted a declaration describing more times that Plaintiff recalled being offsite that were not included in the produced documents. Defendants responded, explaining how the produced documents showed where Plaintiff was located for 13 of the 14 examples. Judge Russo accepted Defendants' position that 13 of the 14 examples were described in the produced documents. Judge Russo found that "it is clear from the documents produced by defendants where and when plaintiff was working. . . . and that requiring defendants to perform additional searches into the handwritten and electronic records that plaintiff vaguely references in his declaration would not be proportional to the needs of this case." ECF 112 at 2. Judge

Russo concluded that Plaintiff could allege in his amended complaint any additional times that he recalled being offsite.

Plaintiff objects to Judge Russo focusing on the 14 examples, because Plaintiff asserts those were only a small subset of the times shown in Plaintiff's payroll records where he was offsite but the documents do not disclose his work location. Plaintiff also argues that Defendants misled Judge Russo in their explanation describing how the documents disclose Plaintiff's location for 13 of the 14 examples, and also argues that it requires speculation to reach that conclusion because the documents do not make the link Defendants assert.

Plaintiff appears to be arguing that Judge Russo's finding that it is clear from the produced documents where Plaintiff worked and when is clearly erroneous. Plaintiff cites a few discrepancies in the documents, which Plaintiff interprets as evidence of additional offsite work not shown in the one page summary document. Defendants respond with arguments why those discrepancies do not necessarily mean that Plaintiff had additional offsite work. The evidence cited by Plaintiff does not show that Judge Russo's factual finding that the documents adequately show Plaintiff's offsite work location for the 13 examples was clearly erroneous. Nor was it erroneous for Judge Russo to implicitly extrapolate that if the produced documents adequately disclosed Plaintiff's location for 13 of the 14 examples, the documents would similarly disclose location information for the remaining "gaps" purportedly in Plaintiff's records.

Plaintiff also does not show that Judge Russo made any erroneous legal conclusion. "A decision is contrary to law if it applies the wrong legal standard or neglects to consider all elements of the applicable standard." *Nationstar Mortg., LLC v. Decker*, 2015 WL 519884, at *1 (D. Or. Feb. 9, 2015) (quoting *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 2015 WL 419654, at *3 (D. Haw. Jan. 30, 2015)). Judge Russo applied the correct legal standard.

The Court emphasizes that the purpose of requiring limited discovery at this time was to provide Plaintiff additional information so that he can allege with more detail his joint employer claim against the sibling entities. The Court needs more than "routine and frequent" as a blanket assertion for all sibling entities. There is a difference, for example, between working two hours in total at an entity and working two hours per week. The Court previously ordered, however, that "Plaintiff need only outline the 'approximate duration and frequency of his temporary shift(s) with each named facility' such that the Court can distinguish among those facilities at which Plaintiff spent the most cumulative time working and those at which he worked only once or twice." ECF 90 at 4. Thus, Plaintiff need not allege his precise dates and hours worked at each separate entity.

## CONCLUSION

The Court ADOPTS IN PART the Findings and Recommendation, ECF 98. The Court GRANTS IN PART Defendants' Motion to Dismiss, ECF 79, as discussed herein. Plaintiff may file a Fourth Amended Complaint with new allegations relating to the potential joint employer sibling entities within 30 days of the date of this Opinion. The Court OVERRULES Plaintiff's objections and AFFIRMS Judge Russo's nondispositive Order (ECF 112).

**IT IS SO ORDERED.**

DATED this 25th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge